UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JAMES C.,                                           :
          Plaintiff,                           :
                                                    :
          v.                                    :    C.A. No. 24-002MSM
                                                    :
MARTIN O'MALLEY,                                    :
Commissioner of Social Security,                    :
          Defendant.                           :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On August 17, 2021, Plaintiff James C., a "younger" individual, applied for Supplemental Security Income ("SSI"); this is his second application. Tr. 17. The period in issue for Plaintiff's application begins on the date of application and runs through the date of the adverse decision of the administrative law judge ("ALJ") on December 7, 2022. Tr. 17, 29. Plaintiff is a high school graduate who lives with his parents and whose work history is very limited. Tr. 146, 310. While there is no record of any paid employment since 2002, Tr. 303-04, Plaintiff testified that, prior to September 2018, he sometimes was paid cash for construction work with his father. Tr. 40. In September 2018, Plaintiff was seriously injured (fractures of the feet, legs and spine) when he fell off a roof. Tr. 25. Since the fall, Plaintiff states that he has not worked at all. Tr. 42.

By the time of the period in issue, Plaintiff's injuries from the fall (as well as a wrist injury caused while playing sports in 2021) had improved to the point where, as the ALJ found, Plaintiff retained the RFC[1] to perform light work with additional limits on standing/walking, the

---

[1] RFC refers to "residual functional capacity." It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 416.945(a)(1).

need for breaks, and postural/and environmental limits, as well as that Plaintiff could not work at a job requiring him to drive.  Tr. 23-25.  Based on this RFC and testimony from a vocational expert, the ALJ concluded that Plaintiff was not disabled at any relevant time.  Tr. 23, 27-28.  Except as it relates to seizures, Plaintiff does not challenge the ALJ's approach to his physical impairments.  Rather, Plaintiff now makes two arguments.  First, he contends that the ALJ erred at Step Two in rejecting as not persuasive the report of a consulting psychologist (Dr. Louis Cerbo) and the prior administrative findings of one of the non-examining expert psychologists (Dr. Jeffrey Hughes).  ECF No. 9 at 5-9.  He argues that this error left the ALJ with no guiding mental health opinion to rely on for his analysis of Plaintiff's mental health impairments of anxiety and alcohol abuse, an error that is exacerbated by the ALJ's cherry-picking of Plaintiff's mental health treating records.  Id.  Second, Plaintiff claims that, in formulating the RFC, the ALJ erroneously failed to consider absenteeism caused by Plaintiff's history of seizures during severe alcohol withdrawal, which occurs whenever Plaintiff's alcohol consumption drops below his customary level for even a day.  Id. at 9-11.  Based on these arguments, Plaintiff has filed a motion for reversal or remand.  The Commissioner's counter motion (ECF No. 10) asks the Court to affirm because the ALJ's decision is consistent with applicable law and well supported by substantial evidence.

## I.  Standard of Review

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §§ 405(g), 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  Substantial evidence

"means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding.  Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103).  Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981).  The determination of substantiality is based upon an evaluation of the record as a whole.  Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015). If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Sacilowski v. Saul, 959 F.3d 431, 433, 440-41 (1st Cir. 2020); Randy M. v. Kijakazi, C.A. No. 20-329JJM, 2021 WL 4551141, at *2 (D.R.I. Oct. 5, 2021).

## II.    Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.605. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 416.905-11.

### A.    The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920(a)(1). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Id. § 416.920(a)(4)(iii). Fourth, if a

claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20

C.F.R. § Id. § 416.920(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age,

education and past work) prevent doing other work that exists in the local or national economy, a

finding of disabled is warranted.  Id. § 416.920(a)(4)(v).  Significantly, the claimant bears the

burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.

Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 143-44 (D. Mass. 2003)

(five-step process applies to SSI and DIB claims).

      **B.**      **Opinion Evidence**

      An ALJ must consider the persuasiveness of all medical opinions in a claimant's case

record.  See 20 C.F.R. § 416.920c.  A "medical opinion" is defined in the regulations as a

statement that identifies specific functional "limitations or restrictions" "about what [claimants]

can still do despite [their] impairment(s)."  Id. § 416.913(a)(2).  The most important factors to be

considered when the Commissioner evaluates the persuasiveness of a medical opinion are

supportability and consistency; these are usually the only factors the ALJ is required to

articulate.  Id. § 416.920c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019);

Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019).

Supportability "includes an assessment of the supporting objective medical evidence and other

medical evidence, and how consistent the medical opinion or . . . medical finding is with other

evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

Fed. Reg. 5844-01, 5859 (Jan. 18, 2017).  Other factors that are weighed in light of all of the

evidence in the record includes the medical source's relationship with the claimant and

specialization, as well as "other factors" that tend to support or contradict the medical opinion or

finding.  See 20 C.F.R. § 416.920c(c).  "A medical opinion without supporting evidence, or one

that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854.

**C.      Step Two Determination**

Step Two is a screening device used to eliminate applicants "whose impairments are so minimal that, as a matter of common sense, they are clearly not disabled from gainful employment."  McDonald v. Sec'y of Health & Hum. Servs., 795 F.2d 1118, 1122 (1st Cir. 1986).  At Step Two, Plaintiff has the burden to show that he had a "medically determinable" physical or mental impairment(s) that significantly limited his ability to do basic work activity at the relevant time.  Luz R. v. Saul, C.A. No. 19-00307-WES, 2020 WL 1026815, at *6 (D.R.I. Mar. 3, 2020), adopted by text order (D.R.I. Mar. 30, 2020).  An error at Step Two does not require remand as long as the sequential analysis continues and limitations caused by symptoms related to the overlooked impairment are incorporated into the RFC.  White v. Colvin, No. 14-171 S, 2015 WL 5012614, at *8 (D.R.I. Aug. 21, 2015); see Courtemanche v. Astrue, No. CA 10-427M, 2011 WL 3438858, at *15 (D.R.I. July 14, 2011) (any error at step two is harmless "absent any specific showing by Plaintiff of any particular functional limitations attributable to [the impairment] that the ALJ failed to consider in making his RFC finding"), adopted sub nom. Courtemance v. Astrue, 2011 WL 3421557 (D.R.I. Aug. 4, 2011).

**D.      Materiality of Alcoholism**

In creating the social security disability system, Congress carved out an important exception to eligibility – that work-limiting symptoms to which alcoholism (or other substance abuse) is a material contributing factor may not be the basis for an award of disability benefits. See 42 U.S.C. § 1382c(a)(3)(J) ("an individual shall not be considered to be disabled for

6

purposes of this subchapter if alcoholism . . . would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled"). It is well settled that this includes symptoms caused not just by alcohol abuse but also by alcohol withdrawal due to alcoholism; courts consistently affirm ALJ determinations that alcohol withdrawal symptoms (including seizures) may not result in a finding of disability as long as substantial evidence supports the conclusion that the symptom in issue is not established independent of alcohol withdrawal. See, e.g., Bryant v. Colvin, No. 13-80758-CIV-HOPKINS, 2015 WL 12517574, at *4 (S.D. Fla. Feb. 19, 2015) (no error in ALJ finding that substance abuse is contributing factor material to symptoms of seizures and anxiety caused by alcohol withdrawal); Newsome v. Astrue, 817 F. Supp. 2d 111, 135 (E.D.N.Y. 2011) (no error in ALJ's finding that seizures caused by alcohol withdrawal amount to symptom to which alcoholism is material contributing factor). Relatedly, the district court in Massachusetts affirmed an ALJ's finding of not disabled and did not even consider the ALJ's failure to consider absenteeism arising from claimant's repeated emergency room and hospital/rehabilitation for alcohol detoxification. Weeks v. Berryhill, Civil Action No. 18-11553-JGD, 2019 WL 2441848, at *1, *6-10 (D. Mass. June 11, 2019).

Once alcohol abuse is established, it is the claimant's burden to demonstrate that it is not a material contributing factor to symptoms impacting the ability to work. Doughty v. Apfel, 245 F.3d 1274, 1281(11th Cir. 2001); Evans v. Astrue, No. CA 11-146 S, 2012 WL 4482366, at *8 (D.R.I. Aug. 23, 2012), adopted, 2012 WL 4482354 (D.R.I. Sept. 26, 2012); Newsome, 817 F. Supp. 2d at 126-27 (listing cases). "The 'key factor' to be considered, in fact the only factor mentioned in the regulations, is whether the claimant would still be disabled absent the drug addiction or alcoholism." Caroline P. v. O'Malley, C.A. No. 23-00430-LDA, 2024 WL

3014429, at *6-7 (D.R.I. June 14, 2024) (quoting Brown, 71 F. Supp. 2d at 35).  Effective on

March 22, 2013, a policy interpretation clarifies how the Commissioner determines whether

"drug addiction and alcoholism" is a medically determinable impairment and, if either is,

whether such substance abuse is material to the finding that a claimant is disabled, requiring that

benefits be denied.  SSR 13-2p, 2013 WL 621536, at *1 (Feb. 20, 2013).  To determine

materiality, the ALJ must first conduct the five-step inquiry taking into account all impairments,

including drug and alcohol addiction.  Caroline P., 2024 WL 3014429, at *7.  If the ALJ finds

the claimant is not disabled, the process ends.  Id.; SSR 13-2p, 2013 WL 621536, at *10.

III.    **Analysis and Recommendation**

    A.    **Step Two Error – Anxiety and Alcohol-Related Impairments**

        1.    Background

Except for diagnoses of alcohol abuse and alcohol withdrawal, as well as treatment

during episodes of severe alcohol withdrawal, Plaintiff's treating record is utterly devoid of

mental health treatment nor does it contain any mental health diagnosis.[2]  Apart from alcohol-

related issues, the only references to mental health appear in records reflecting treatment for

physical impairments and sometime during hospitalizations for alcohol withdrawal, when

Plaintiff's treating sources sometimes recorded mental health observations.  As the ALJ found,

these are consistently benign.  See, e.g., Tr. 1485-86 (during follow-up treatment for wrist,

Plaintiff observed to be oriented to time, place and person, with appropriate mood and affect);

Tr. 1559 (physician observes mood and affect normal, behavior normal, thought content normal

and judgment normal); Tr. 1587 (social worker observes alert with normal orientation, euthymic

mood and congruent affect); Tr. 1862-64 (primary care physician observes no depression, mild

---

[2] One provider (a foot doctor) maintained records that listed anxiety as a "past" diagnosis, but not one that is a current issue.  Tr. 1523.  Most records do not list anxiety even as past medical history.  E.g., Tr. 1463, 1862.

anxiety, normal affect, pleasant, in good spirits, good eye contact, good judgment and insight);

cf. Tr. 1104 (consulting neurologist observes euthymic mood, normal affect, no impairment or

abnormality of attitude, thought process, attention span or thought content). That is, other than

during alcohol withdrawal, no treating source has opined that Plaintiff suffers from mental health

symptoms that significantly impact the ability to work.

Regarding alcohol abuse and alcohol withdrawal, the record reflects that Plaintiff

declined treatment, daily drank large amounts of beer and other forms of alcohol and

experienced severe withdrawal symptoms whenever he reduced his alcohol consumption even

for a day. Thus, before the period in issue, the records reflect two hospitalizations during 2019

and one in 2018 when Plaintiff stopped drinking for a day and began to have seizures; each time

he required hospitalization with intensive care for hallucinations, severe agitation and other

symptoms that persisted for a week or more. Tr. 380-486, 593-646. These records consistently

reflect that, apart from withdrawal symptoms, Plaintiff's mental status was observed to be

normal during and after each of these episodes. See, e.g., Tr. 387 ("A+Ox3 with euthymic mood

and congruent affect"); Tr. 435 ("no longer required any Ativan was mildly lethargic but was

alert and oriented and was felt to be medically stable for discharge"); Tr. 485 ("Alert, oriented x

3. . . . Psychiatric: normal mood"); Tr. 646 (at discharge, "Patient was alert and oriented x3, no

tremors. PSYCHIATRIC: Normal mood and affect. No **hallucinations** today.") (emphasis in

original). At discharge from each of these hospitalizations, Plaintiff was not given a

recommendation or prescription for mental health treatment (other than for substance abuse).

That is, these records reflect that, once Plaintiff recovered from alcohol withdrawal and was

alcohol-free, no provider observed any mental status impairment or mental health symptoms.

9

During the period in issue, Plaintiff had only one alcohol withdrawal episode – in December 2021. As in 2018/2019, Plaintiff had stopped drinking alcohol the day before and was hospitalized for ten days with seizures, hallucinations, agitation and other severe symptoms. Tr. 1555-93. These treating records are clear – Plaintiff's seizures are not because of a seizure disorder; rather, they are a symptom of alcohol withdrawal. Tr. 1555-57 (hospital physician notes denial of history of seizure disorder aside from alcohol withdrawal or of prescription for antiepileptic drugs); see Tr. 44, 52-53 (Plaintiff testifies that he is not taking prescribed antiepileptic medication, was never told he should not drive because of seizures and understands his seizures are caused by alcohol withdrawal and by not eating). Also, as in 2018/2019, during this hospitalization, Plaintiff's mental status was assessed as normal once alcohol withdrawal symptoms abated. Tr. 1580 (physician assesses "Psych normal mood and affect"); Tr. 1587 (social worker assesses "A+Ox3 with euthymic mood and congruent affect").

2.      Conflicting Expert Findings/Opinions

In connection with Plaintiff's prior application, consulting psychologist Dr. Cerbo performed a one-time telephonic examination of Plaintiff that consisted only of a mental status examination. Tr. 1092-97. Dr. Cerbo was not asked to and did not administer a test battery to diagnose intellectual capacity, cognitive functioning or learning disabilities. Dr. Cerbo's report notes that Plaintiff has not taken psychotropic medication and is a high school graduate. Tr. 1093. Based on Plaintiff's report of being anxious and having sleep issues, Dr. Cerbo recorded a diagnosis of anxiety, albeit with no opinion regarding severity or functional impact, in addition to alcohol abuse disorder with history of alcohol withdrawal symptoms. Tr. 1094. Regarding Plaintiff's ability to concentrate, Dr. Cerbo noted intact functioning with normal results on various tests, including the Montreal Cognitive Screening Test. Tr. 1094-95. Despite the lack of

10

supportive testing except for "difficulty with the multi-sequential task such as Letter-Number sequencing," Dr. Cerbo wrote, "It is my opinion that he does present with a learning disability significant for difficulty with reading and writing which may impact his work environment due to limited intellectual ability." Tr. 1095. However, Dr. Cerbo did not list learning disability as a diagnosis, nor did he opine that specific functional limitations would be caused by a learning disability.

At the initial phase of the current application, non-examining psychologist Dr. Hahn deployed her expertise to review a record that included most of the benign treating records described *supra*, but also the Lifespan records reflecting Plaintiff's 2018 and 2019 hospitalizations for alcohol withdrawal and the Cerbo report with its mental health diagnoses of anxiety and alcohol use disorder. The applicable evidentiary analysis for Dr. Hahn's phase of the case is particularly focused on Plaintiff's diagnoses of alcohol abuse and withdrawal and his ongoing alcohol use, as well as on the Cerbo report. Tr. 177-79. Based on her review of these records, Dr. Hahn agreed with Dr. Cerbo to the extent that she found that Plaintiff suffered from the medically determinable impairments of anxiety and alcohol use disorder, however, she also found that both of these are non-severe for Step Two purposes: "[p]ysch condition currently non-severe" with no limits or mild limits in the "B" criteria spheres. Tr. 179-80.

By the time of the reconsideration phase, the record had been supplemented by Plaintiff's late 2021 hospitalization for alcohol withdrawal. The second non-examining psychologist Dr. Hughes examined all of the records assembled, disagreed with Dr. Cerbo's diagnosis of anxiety and Dr. Hahn's finding that Plaintiff has medically determinable anxiety; he found that Plaintiff does not suffer from any mental health impairment, apart from alcohol abuse. Tr. 187-91. As to alcohol disorder, Dr. Hughes disagreed with Dr. Hahn's conclusion that it is not severe; rather,

11

he found alcohol abuse to be a severe impairment that was causing mild limits on Plaintiff's

ability to understand/remember and to adapt/manage, but moderate social and concentration

limits. Tr. 190-91. Importantly, mindful of applicable law, Dr. Hughes specifically found:

"DAA is the only psych impairment. Without DAA, there are no psych impairments from psych

onset/protective filing date to present. Therefore, DAA (alcohol use) is material." Tr. 191.

Thus, if the ALJ had found Dr. Hughes' findings persuasive, the limits noted in Dr. Hughes'

opinion preclude a finding of disability in light of 42 U.S.C. § 1382c(a)(3)(J) ("individual shall

not be considered to be disabled . . . if alcoholism . . . would . . . be a contributing [material]

factor").

### 3. ALJ's Approach

With the balance of the record (including the massive treating record) as background, the

ALJ appropriately considered these conflicting mental health findings. He resolved the conflicts

among them by finding Dr. Cerbo and Dr. Hughes not persuasive, relying instead on Dr. Hahn as

persuasive. Tr. 20-21. In so doing, the ALJ noted that Dr. Cerbo's opinion regarding anxiety

and a learning disability clash with the utter absence of such observations in the treating record,

as well as with Dr. Cerbo's own observations, including the normal result on the cognitive

screening test. Tr. 21. The ALJ specifically and appropriately noted that Dr. Cerbo did not list

learning disability as a diagnosis. Id. In reviewing the Hughes opinion, the ALJ focused on the

Hughes findings of moderate social and concentration limits (which contrast with the Hahn's

findings of no limits or mild limits in each of these spheres). Tr. 20-21. The ALJ compared

Hughes's finding of severe alcohol use disorder with Plaintiff's consistently benign treatment

findings (except during acute alcohol withdrawal), as well as with Dr. Cerbo's test results, which

support intact concentration and no neurobehavioral deficits. Tr. 21. The ALJ resolved the

conflicts among these experts by relying entirely on Dr. Hahn with limited reliance on Dr. Cerbo

and Dr. Hughes as clearly described in his decision. Tr. 20-22. Because this approach yielded a

finding of not disabled when all impairments are considered, the ALJ did not perform a separate

alcoholism materiality analysis.

          4.     <u>Analysis</u>

Plaintiff challenges the ALJ's well-supported findings by arguing that the ALJ had no

"guiding opinion." ECF No. 9 at 7. This is simply wrong. As noted, the ALJ appropriately

resolved a conflict among the experts and relied on the Hahn opinion, with a well-developed

explanation for how he did it. <u>See</u> Tr. 20-21. For the same reason, Plaintiff's assertion that the

ALJ relied on his untutored lay analysis at Step Two is equally unavailing. Also flawed is

Plaintiff's critique based on the ALJ's consideration of mental status observations made by

medical sources who are not mental health experts: because Plaintiff never was referred for or

received mental health treatment, this record does not have treating mental status examinations[3]

performed by mental health professionals.[4] There is no error in the ALJ's reliance on such

mental health observations as are available.

In further support for his attack on the ALJ's Step Two analysis, Plaintiff also accuses the

ALJ of cherry-picking the mental health treating record. ECF No. 9 at 7-8. His only basis for

this argument appears to be his erroneous assumption that the Cerbo report is treatment-based.

<u>See</u> n.3 *supra*. Having reviewed this massive record in its entirety, and focusing on the treating

---

[3] This flawed argument appears to be based on Plaintiff's mistaken assumption that Dr. Cerbo is a treating source. <u>See</u> ECF No. 9 at 6 (citing to mental status observations in Cerbo report as treatment-based). Dr. Cerbo did not provide Plaintiff with any treatment. He simply performed a telephonic mental status examination at the request of Disability Determination Services in connection with Plaintiff's prior application. Tr. 1092.

[4] One possible exception that the Court discovered in the course of its review is a social worker at Lifespan who performed an assessment on December 21, 2021. Consistent with the other benign mental health findings of record, this social worker noted, "A+Ox3 with euthymic mood and congruent affect." Tr. 1587.

records, I find that the ALJ did not cherry-pick.  To the contrary, I find that the ALJ's decision

appropriately highlights certain records, as the Commissioner summarizes in his brief, ECF No.

10 at 6-7, which I find are typical of and consistent with the balance of the treating record, as

well as with Plaintiff's statements, for example in the function report.  See, e.g., Tr. 335, 350.

Overall, I find that the treating record affords ample support for the ALJ's finding that Plaintiff

exhibited almost no mental health symptoms except during acute alcohol withdrawal episodes.

Based on the foregoing, I find no error in any aspect of the ALJ's nuanced Step Two

analysis and thoughtful Step Two decision; it is consistent with applicable law and well

supported by substantial evidence.  Having reviewed the entire record, I further find that the

medical evidence is such that a reasonable mind would accept it as adequate to support the ALJ's

conclusion.  See Biestek, 587 U.S. at 103.  I recommend that the Court affirm the ALJ's Step

Two findings.

### B.      RFC Error – Seizures

The ALJ supportably considered seizures as a symptom of alcohol withdrawal, which he

found to be non-severe at Step Two based on it having occurred only once during the period in

issue.  Tr. 19-20.  No source has opined otherwise.[5]  Nevertheless, the ALJ added extra breaks to

the RFC to take potential alcohol withdrawal into consideration.  Tr. 19-20, 23.  In addition, the

ALJ relied on Plaintiff's testimony that he opted not to drive because of fear of seizures (even

though no physician advised him not to drive), Tr. 44, to add the work-limit of no driving to the

RFC.  Tr. 23, 25.

Plaintiff's challenge to this aspect of the ALJ's decision is puzzling.  First, he contends

that the ALJ "is silent" regarding seizures, but then pivots to concede that the ALJ did consider

---

[5] Dr. Hughes opined that alcohol abuse is severe (disagreeing with Dr. Hahn's opinion that it is not).  No expert opined that alcohol withdrawal was a severe impairment during the period in issue.

seizures but erred in not finding them to be work-preclusive because the onset of withdrawal symptoms would result in absenteeism that should have been incorporated in the RFC.  ECF No. 9 at 10-11.  In pressing this argument, Plaintiff ignores that the ALJ appropriately and supportably found that alcohol withdrawal was a non-severe impairment that did not cause significant work-limiting symptoms because it occurred only once throughout the period in issue.  Plaintiff also fails to explain how this argument meshes with applicable law.  That is, if the ALJ erred in finding alcohol-related seizures to be non-severe (which I do not find), the ALJ must then launch a materiality analysis and Plaintiff points to no evidence to sustain his burden of demonstrating that alcoholism is not a material contributing factor to seizures caused by alcohol withdrawal, which he must show to rely on seizures as the basis for disability.  See Bryant, 2015 WL 12517574, at *4 (when records clearly indicate history of significant alcohol abuse, claimant must meet burden of proving that such abuse was not a material contributing factor to potentially disabling symptom of seizures).

I find no error in the ALJ's approach to Plaintiff's seizures.  I recommend that the ALJ's RFC determination be affirmed.

## IV.    Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 9) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 10) be GRANTED.  Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See

Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v.

Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 9, 2024